UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
HARSHARAN SETHI,

                           Plaintiff,

  -against-

NASSAU COUNTY, NASSAU COUNTY
POLICE DEPARTMENT, NASSAU COUNTY
P.O. JEFF BIGGER, sued herein individually and
in his official capacity, P.O. EVISCERATE, sued
herein in his individual and official capacity,
RXR SECURITY GUARD RANDY LNU,
RXR MANAGEMENT COMPANY,

                           Defendants.
------------------------------------------------------------X

**ORDER**
11-CV-6380 (SJF)(GRB)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★  JUN 03 2014  ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On December 30, 2011, plaintiff Harsharan Sethi ("plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Nassau County, Nassau County Police Department, Police Officer Jeff Biggers (s/h/a "P.O. Jeff Bigger"), and Police Officer Gregory Echevarria (s/h/a "P.O. Eviscerate") (collectively, the "County Defendants"), and RXR Management Company and "RXR Security Guard Randy" (together, "RXR").[1] Compl. On March 23, 2012, the County Defendants answered and asserted a cross-claim against RXR.

---

[1] Specifically, plaintiff asserts three (3) "causes of action." First, plaintiff claims that Officer Biggers and Officer Echevarria "confined plaintiff and assaulted him without probable cause." Complaint ("Compl.") [Docket Entry No. 1], ¶ 30. The Court will address this "cause of action" as two (2) separate claims: (i) false arrest or false imprisonment (the "false arrest claim"); and (ii) excessive force. Second, plaintiff alleges that the "failure of [Nassau County and the Nassau County Police Department] to provide training and supervision regarding when a seizure of a private citizen is appropriate and what is reasonable force to be used in connection with such seizure constitutes gross negligence and/or deliberate indifference to the rights and safety of the citizens of the state of New York and the County of Nassau" (the "*Monell* claim" or "municipal liability claim"). Compl. ¶ 34. Third, plaintiff asserts that RXR assisted Officer Biggers and Officer Echevarria "in assaulting plaintiff, unlawfully seizing plaintiff and forcefully removing him from the premises without reason or probable cause." Compl. ¶ 40.

[Docket Entry No. 2]. On March 13, 2013, this Court granted RXR's motion for summary judgment and dismissed all claims and cross-claims against RXR with prejudice. [Docket Entry No. 26]. Now before the Court is the County Defendants' motion for summary judgment. [Docket Entry No. 45]. For the reasons that follow, the County Defendants' motion is GRANTED.

I.     Factual Background[2]

On December 1, 2011, Michelle Trabucchi ("Trabucchi")[3] called 911 to report that a former employee of Cambridge, whom she identified as plaintiff Harsharan Sethi, was seen taking photographs of employees in the lobby level of the office building, located at 498 RXR Plaza, Uniondale, New York ("RXR Plaza"). (Defs.' 56.1 Stmt. ¶¶ 2-4; Nassau Cnty. P.D. Event Search, at 1-2). Trabucchi informed the 911 operator that Cambridge "has an ongoing lawsuit with [plaintiff]," that plaintiff was "now pacing back and forth" and "looks a little off," and that

---

[2]     The facts are taken from the undisputed statements in the County Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Defs.' 56.1 Stmt.") [Docket Entry No. 47], plaintiffs' Response to Defendants' Statement of Material Facts Pursuant to Rule 56.1 ("Pl.' 56.1 Stmt.") [Docket Entry No. 49], the declaration of Liora M. Ben-Sorik in support of the County Defendants' motion for summary judgment ("Ben-Sorik Decl.") [Docket Entry No. 46] and the exhibits attached thereto, and my review of the record.

[3]     Plaintiff contends that Trabucchi "was an employee of Worldwide Who's Who . . . and was calling for Worldwide Who's Who." (Pl.' 56.1 Stmt. ¶ 2). This is belied by the record. Nassau County Police Department records identify the caller as "Cambridge Who's Who." (Ben-Sorik Decl., Ex. C ("Nassau Cnty. P.D. Event Search"), at 1). Trabucchi testified that she has never worked for Worldwide Who's Who, which is the "umbrella company" for four (4) companies – Cambridge Who's Who Publishing ("Cambridge"), Elite American Publishing ("Elite"), Professional Biographers, and Who's Who Publishers – that are all in the same building and are owned by the same person. (Ben-Sorik Decl., Ex. J ("Trabucchi Depo."), at 6, 25-26). Trabucchi worked for Cambridge as a senior human resources generalist from February 2008 through November 2011, and then began working for Elite. (Id. at 6-7). Trabucchi was working for Elite when she made the 911 call on December 1, 2011. (Id. at 7). While employed as a senior human resources generalist for both Cambridge and Elite, Trabucchi reported to Deb Morrissey, a Cambridge employee. (Id.).

2

employees were "very upset" and "very nervous." (Defs.' 56.1 Stmt. ¶ 3; Nassau Cnty. P.D. Event Search, at 2).

In response to Trabucchi's 911 call, Officer Biggers and Officer Echevarria (together, the "Officers") arrived at RXR Plaza and spoke with Cambridge personnel. (Defs.' 56.1 Stmt. ¶¶ 7, 9). The Officers were told that plaintiff had been fired from his position at Cambridge. (Ben-Sorik Decl., Ex. H ("Biggers Depo."), at 30). The Officers were informed that "one of [Cambridge's] employees was down in the cafeteria and being followed by [plaintiff] and he was taking pictures . . . of her." (Ben-Sork Decl., Ex. G ("Echevarria Depo."), at 12-13). The Officers were shown a postcard with "derogatory statements" about Cambridge, purportedly sent by plaintiff to Cambridge employees and/or clients, which included photographs of Cambridge employees. (Biggers Depo., at 29-31; Echevarria Depo., at 12-13; Trabucchi Depo., at 30-32). Following their conversation with Cambridge personnel, the Officers returned to the lobby level of RXR Plaza, where a female Cambridge employee identified plaintiff. (Defs.' 56.1 Stmt. ¶¶ 10-11; Echevarria Depo., at 13-15).

The Officers approached plaintiff and asked him for identification, but plaintiff refused to provide identification and "became very agitated." (Echevarria Depo., at 15-17; Defs.' 56.1 Stmt. ¶¶ 13-17). According to Officer Biggers, plaintiff "was immediately being combative with us" and "[r]efused to show us his I.D." (Biggers Depo., at 22). At some point, plaintiff told the Officers that he was at RXR Plaza for a dental appointment and presented an appointment card for a future date.[4] (Defs.' 56.1 Stmt. ¶¶ 18; Biggers Depo., at 23-24; Transcript, at 4-5). Officer

---

[4] On December 1, 2011, plaintiff carried a recording device in the breast pocket of his shirt, which recorded all of his interactions at RXR Plaza. (Ben-Sorik Decl., Ex. I ("Sethi Depo."), at 68-75). The transcript of the audio recording reveals that plaintiff was at the dentist's office for approximately nine (9) minutes, during which time he spoke with the receptionist about insurance coverage and x-rays, and scheduled an appointment for January 11, 2011. (Ben-Sorik Decl., Ex. F ("Transcript"), at 1-3). Plaintiff was not treated by a dentist on December 1, 2011. (Sethi Depo., at 66).

3

Biggers went to the dentist's office and was informed that "[plaintiff] was not a patient, [and] was not there for an appointment." (Biggers Depo., at 28; Defs.' 56.1 Stmt. ¶¶ 19-20). Upon concluding that plaintiff "had no legitimate reason to be in the building," the Officers asked plaintiff to leave RXR Plaza. (Biggers Depo., at 28-29; Defs.' 56.1 Stmt. ¶¶ 21-23).

When plaintiff did not immediately leave RXR Plaza following the Officers' request, the Officers escorted plaintiff outside, with Officer Echevarria holding plaintiff's right wrist and triceps, and Officer Biggers with a hand on plaintiff's back.[5] (Defs.' 56.1 Stmt. ¶¶ 24-27; Echevarria Depo., at 28-30; Biggers Depo., at 36-41). Once outside, the Officers instructed plaintiff to "get in [his] car" and "leave the property." (Transcript, at 11-12).

Plaintiff did not seek medical treatment for any injuries alleged to have been incurred during the December 1, 2011 encounter with the Officers, nor has plaintiff sought any mental health counseling. (Sethi Depo. at 138, 141). Plaintiff did not file a complaint with any agency regarding the events of December 1, 2011. (*Id.* at 145).

II. Analysis

A. Standard of Review

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could

---

[5] During the encounter, plaintiff accused the Officers of "hitting" him while he was escorted from the building. (Transcript, at 6). However, plaintiff admitted during his deposition that he used the word "hitting" to describe that one of the officers "pulled my hand and he extended all the way back and twist it." (Sethi Depo., at 134).

4

rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citations omitted). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009) (internal quotation marks and citation omitted); *see also Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citation omitted). If this burden is met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358 (citation omitted). In order to defeat summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal quotation marks and citations omitted); *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) ("At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." (internal quotation marks and citation omitted)).

B. Section 1983

Section 1983 of Title 42 of the United States Code provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 132 S.Ct. 1657, 1661, 182 L.Ed.2d 662 (2012). Thus, to state a Section 1983 claim, a plaintiff must allege: (1) that the challenged conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States," and (2) that such challenged conduct was "committed by a person acting under color of state law." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)); *see also Rehberg v. Paulk*, 132 S.Ct. 1497, 1501-02, 182 L.Ed.2d 593 (2012). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

1. Claims Against the Officers

   a. False Arrest Claim

Plaintiff claims that the Officers subjected "him to an illegal seizure and forc[ed] him from the building without probable cause or reason." Compl. ¶ 3. A claim for false arrest, based on the Fourth Amendment right to be free from unreasonable seizures, is "substantially the same as a false arrest claim under New York law." *Weyant v. Okst*, 101 F.3d 856 (2d Cir. 1996). To state a claim for false arrest, a plaintiff must show that: "(1) the defendant[s] intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent

to the confinement, and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks and citation omitted).

The County Defendants contend that plaintiff was merely "temporarily stopped to enable Police Officers Biggers and Echevarria in investigating a 911 call of harassment," and that plaintiff was not arrested because he "was free to leave, and even encouraged to leave, the RXR premises." Memorandum of Law in Support of the County Defendants' Motion for Summary Judgment ("Defs.' Mot.") [Docket Entry No. 48], at 6-7. Alternatively, defendants argue that even if plaintiff's detention constituted an arrest, it was privileged "in light of the existence of probable cause." *Id.* at 7.

Police officers may conduct investigatory stops if they have "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Arrests, on the other hand, must be supported by probable cause. *See United States v. Vargas*, 369 F.3d 98, 101 (2d Cir. 2004). "Whether an arrest supportable by probable cause occurs, as distinct from a form of Fourth Amendment intrusion supportable by less than probable cause, depends on the seizure's level of intrusiveness, and on the corresponding degree of justification required to effect each level of intrusiveness." *Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991). "A permissive investigative stop may become an unlawful arrest if the means of detention are 'more intrusive than necessary.'" *United States v. Tehrani*, 49 F.3d 54, 61 (2d Cir. 1995) (quoting *United States v. Perea*, 986 F.2d 633, 644 (2d Cir. 1993)). "In determining whether an investigatory stop is sufficiently intrusive to ripen into a *de facto* arrest, the Second Circuit considers the 'the amount of force used by the police, the need

for such force, and the extent to which the individual's freedom of movement was restrained.'" *Vargas*, 369 F.3d at 101 (quoting *Perea*, 986 F.2d at 645).

Assuming, *arguendo*, that plaintiff's brief encounter with the Officers constituted an arrest, plaintiff may not succeed on his false arrest claim if the Officers had probable cause. *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). Probable cause exists whenever "an arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Id.* at 119 (internal quotation marks and citation omitted). Probable cause may "exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted). "The burden of establishing the absence of probable cause rests on the plaintiff." *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 220 (E.D.N.Y. 2007) (citations omitted). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 845.

The Officers arrived at RXR Plaza in response to a 911 call "for a suspicious person who was harassing and following his former employee and fellow employers," "videotaping them with his cell phone," and who "appeared to be nervous and acting erratically." (Biggers Depo., at 10-11). Upon speaking with Cambridge personnel, the Officers learned that plaintiff had harassed employees in the past. The Officers were shown cards, purportedly sent by plaintiff, which included derogatory comments and photographs of Cambridge employees. A Cambridge employee identified plaintiff to the Officers. Based on this information, the Officers had "reasonably trustworthy information" to believe that plaintiff had, and was presently, harassing

CWW employees.[6] *See Singer*, 63 F.3d at 119. Plaintiff submits no evidence other than his own unsubstantiated conclusion, which is insufficient to satisfy his burden to establish that the Officers lacked probable cause. *See Nelson*, 524 F. Supp. 2d at 220.

Furthermore, plaintiff was not restrained during the encounter with the Officers, and was in fact, encouraged to leave RXR Plaza. (Defs.' Mot., at 7). It was not until plaintiff ignored the Officers' request that plaintiff leave the premises that the Officers physically touched plaintiff and escorted him out of the building. Under these specific circumstances, plaintiff's encounter with the Officers constituted an investigatory stop, and not an arrest. At the very least, based upon the totality of the circumstances and the facts as told to them, the Officers had a reasonable basis to support an investigatory stop. *See United States v. Gori*, 230 F.3d 44, 53 (2d Cir. 2000) (police officer may stop a person to investigate possible criminal behavior based upon reasonable suspicion, even if there is no probable cause to make an arrest); *Floyd v. City of N.Y.*, 959 F. Supp. 2d 540, 648 (S.D.N.Y. 2013) ("The police has reasonable suspicion to forcibly stop [the suspect] for suspected harassment because he matched a specific description provided by an identified victim, and was in close proximity to the reported harassment just minutes after it allegedly occurred."); *United States v. McCargo*, 464 F.3d 192, 197 (2d Cir. 2006) (officers had reasonable suspicion for investigatory stop, where defendant was within proximity of reported crime, even though officers had no physical description of the suspect). Accordingly, the County

---

[6] Under New York law, a person who "intentionally and repeatedly harasses another person by following such person in or about a public place" is guilty of harassment in the first degree. N.Y. Penal Law § 240.25. A person is guilty of harassment in the second degree when, "with intent to harass, annoy or alarm another person . . . [he] follows a person in or about a public place," or "engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose." N.Y. Penal Law § 240.26. A person who, "with intent to harass, annoy, threaten or alarm another person . . . communicates with a person, anonymously or otherwise, by . . . mail, or by transmitting or delivering any other form of written communication, in a manner likely to cause annoyance or alarm" is guilty of aggravated harassment in the second degree. N.Y. Penal Law § 240.30.

9

Defendants' motion for summary judgment is granted with respect to plaintiff's false arrest claim.

b. Excessive Force Claim

Plaintiff complains that he was subjected to excessive force during his encounter with the Officers on December 1, 2011. Claims "that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure'" are "analyzed under the Fourth Amendment's 'objective reasonableness standard.'" *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865 (1989); *see also Terranova v. New York*, 676 F.3d 305, 308 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 414, 184 L.Ed.2d 156 (2012) ("Claims that the police used excessive force are judged under the Fourth Amendment's 'objective reasonableness' standard." (internal quotation marks and citations omitted)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 409 U.S. at 396-97; *see also Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (accord).

The force used by the Officers to remove plaintiff from RXR Plaza was reasonable under the circumstances where, as discussed above, plaintiff refused to provide identification, became "agitated" and "combative," and failed to comply with the Officers' request that he leave RXR Plaza. (Echevarria Depo., at 17; Biggers Depo., at 22). While plaintiff complained that the Officers were "hitting" him as he was escorted from RXR Plaza, plaintiff later admitted that he used the word "hitting" to describe that one of the officers "pulled [his] hand and [] extended all the way back and twist[ed] it." (Transcript at 6; Sethi Depo. at 134). Furthermore, plaintiff admits that he sustained no injuries as a result of the encounter and did not require any medical treatment. Therefore, as a matter of law, "such amount of force cannot be considered excessive."

10

*Petway v. City of N.Y.*, No. 02-CV-279, 2014 WL 839931, at *8 (E.D.N.Y. Mar. 4, 2014) (granting summary judgment and dismissing excessive force claim where officer's "slight shove" caused plaintiff no injury and required no medical treatment); *see also Genia v. N.Y. State Troopers*, No. 03-CV-0870, 2007 WL 869594, at *20 (E.D.N.Y. Mar. 20, 2007) (holding "alleged 'push' cannot constitute unreasonable excessive force in violation of the Fourth Amendment" where plaintiff did not seek medical attention and did not allege any specific injuries); *Roundtree v. City of N.Y.*, 778 F. Supp. 614, 622 (E.D.N.Y. 1991) ("[T]o conclude that a 'push' that does not cause the slightest of physical injuries to the plaintiff is nonetheless an actionable use of excessive force would be to hold that *any* physical contact by the arresting officer with an arrested person is actionable."). Accordingly, the County Defendants' motion for summary judgment is granted with respect to plaintiff's excessive force claim.[7]

C. Municipal Liability Claim

Under *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). In order to prevail on such a claim against a municipal defendant, the plaintiff must establish as a prerequisite an underlying constitutional violation on the part of individual municipal actors. *See Segal v. City*

---

[7] Defendants argue that even if the Officers' brief detention and minimal physical contact with plaintiff constitute a constitutional deprivation, the Officers are entitled to qualified immunity. (Defs.' Mot., at 14-15). "As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Kerman v. City of N.Y.*, 374 F.3d 93, 108 (2d Cir. 2004) (citations omitted). However, "[i]f the plaintiff fails to establish a constitutional violation, the qualified immunity inquiry ends and the plaintiff may not recover." *Cowan v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003) (internal quotation marks and citations omitted). Because plaintiff has failed to establish a constitutional violation, plaintiff's false arrest and excessive force claims fail and no qualified immunity analysis is required.

*of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (same).

Plaintiff asserts a *Monell* claim against Nassau County and the Nassau County Police Department. Compl. ¶¶ 32-38. "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (citations omitted). The Nassau County Police Department is an administrative arm of Nassau County, and thus, lacks capacity to be sued. *See id.* (dismissing claim against police department because it is merely administrative arm of municipality); *Sorell v. Inc. Vill. of Lynbrook*, No. 10-cv-49, 2012 WL 1999642, at *5 (E.D.N.Y. June 4, 2012) (dismissing claims against the Nassau County Police Department because it is merely an administrative arm of Nassau County, which had been named separately as a defendant for each of plaintiff's claims); *Wharton v. Cnty. of Nassau*, No. 07-cv-2137, 2010 WL 3749077, at *3 (E.D.N.Y. Sep. 20, 2010) (dismissing claims against the Nassau County Police Department because, as an administrative arm of Nassau county, it lacked capacity to be sued). Accordingly, all claims against the Nassau County Police Department are dismissed.

Furthermore, plaintiff has not established an underlying constitutional violation to which *Monell* liability can extend. *See Segal*, 459 F.3d at 219. Therefore, plaintiff's *Monell* claim against Nassau County is dismissed.

III.  Conclusion

For the foregoing reasons, the County Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is granted. The Clerk of the Court shall enter judgment accordingly and close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein
_____
Sandra J. Feuerstein
United States District Judge

Dated: June 3, 2014
       Central Islip, New York